1999 ME 163

**In re TYLER H.**

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 28, 1999.
Decided Nov. 18, 1999.

Donna A. Bailey, Saco, for appellant.

Andrew Ketterer, Attorney General, Elizabeth F. Stout, Asst. Atty. Gen., Augusta, for appellee.

Christopher Dilworth, Falmouth, Guardian ad Litem.

Sandra Brunk, Buxton, for father.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1]Tyler's mother, Chanin, appeals from the order of the District Court (Biddeford, *Wheeler, J.*) terminating her parental rights. Chanin argues that DHS did not meet the statutory requirements for termination. We affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

[¶ 2] In its exemplary findings of fact following the hearing on the termination petition, the trial court detailed the history of the case, summarized the several orders that had been issued and specified the actions of Chanin and the jeopardy to Tyler that led to the petition for termination. The following facts found by the trial court are supported by the record.

[¶ 3] DHS sought a child protection order on January 19, 1995 when Tyler was three and one-half years old. The Cumberland County Probate Court (*D. Childs, J.*) granted temporary custody of Tyler to DHS, finding that he was in immediate risk of serious harm. Subsequently, the District Court (Biddeford, *Wheeler, J.*), after hearing and by agreement of the parties, made a finding of jeopardy and issued a final child protection order granting custody of Tyler to DHS. The court found that the jeopardy consisted of Chanin's mental health problems, substance abuse, and relationships with abusive men. The jeopardy also involved abuse toward Chanin and her children by Chanin's husband, David, and the domestic violence witnessed by the children. The court further found that Chanin had abused Tyler's sister and Chanin was under indictment for threatening several people with a firearm.

[¶ 4] An order after review was entered on October 31, 1995 (Biddeford, *Levy, J.*), by agreement of the parties, granting custody of Tyler to his maternal grandparents and visitation to Chanin. In the fall of 1996, the grandparents returned Tyler to Chanin, and on July 30, 1997, the court entered an order after review (Biddeford, *Levy, J.*), by agreement of the parties, finding that Tyler continued to be in need of a child protection order and giving Chanin custody of Tyler subject to various conditions. The order provided that a violation of certain enumerated conditions would activate an "immediate transfer clause" whereby DHS could remove Tyler from Chanin's custody without a prior hearing. Among the conditions that would trigger this clause were the following: (1) Chanin was to take reasonable steps to move David out of her home, allowing his return only pursuant to a schedule set forth in the order; and (2) David was to have no unsupervised contact with Tyler.[1] The July 30 order provided that any party could request a review hearing at any time and if the immediate transfer clause was utilized the mother could request a hearing at that time.

[¶ 5] During the summer of 1997, Chanin had several crises consisting of problems with her pregnancy; Tyler's behavior; and David's drinking and refusing to leave Chanin's home which required police intervention. She requested assistance from DHS, and DHS placed Tyler in a crisis center for ten days and later in a foster home for a few days. These were voluntary placements made at the request of Chanin.

[¶ 6] On September 10, 1997, DHS interviewed Tyler, after having been contacted by Tyler's school. Tyler reported that David was living in the same home as Tyler and that Tyler had been left alone with David. Pursuant to the immediate transfer clause in the July 30 order, DHS took custody of Tyler and placed him in a therapeutic foster home where he continues to reside. Chanin did not request a hearing to contest the removal of Tyler from her custody nor did she request a review hearing.

[¶ 7] In October 1997, Chanin moved to Massachusetts with her other two children and refused to disclose her address or phone number to DHS. Chanin provided DHS with the phone number of a contact, and Chanin called DHS when DHS left a message for her. Chanin continued to visit with Tyler on alternate Wednesdays, and she participated in some counseling. Her refusal to disclose her whereabouts,

1. Chanin was divorced from David at this time or in the process of obtaining a divorce.

however, prevented DHS from providing services to her and from assessing her home situation.

[¶ 8] In June 1998, DHS notified Chanin that it was seeking to terminate her parental rights. Chanin still refused to disclose her address. The petition for termination of parental rights was filed in August 1998, and the hearing was held in December 1998. Chanin and her attorney participated in the hearing.

[¶ 9] The court found that Chanin placed Tyler in jeopardy when she exposed Tyler to David in violation of the July 30 order. The court noted that Chanin had divorced David but only because DHS wanted her to divorce him; that Chanin invited David back into her home; and that Chanin believed that David had never abused the children. The court found that Chanin's refusal to cooperate with DHS, as demonstrated by her refusal to disclose her address and participate in a home study, was a further indication of her unwillingness to protect Tyler from jeopardy. The court also recounted that Chanin herself acknowledged that she currently did not have the structure or education necessary to care for Tyler and that his current placement was the best home for him.

[¶ 10] The court heard from Tyler's therapist who described Tyler's aggressive and assaultive behavior. The court found that Tyler's particular needs called for a home with structure and predictability. The court concluded that a termination of parental rights was in Tyler's best interest so that he could be placed in a permanent and nurturing home. The court concluded that the statutory criteria for the termination of Chanin's parental rights were met, and it granted the petition for termination.

[¶ 11] Chanin makes two basic arguments on appeal. First, she claims that the statutory prerequisite of removal of custody was not met because the removal of Tyler from her custody in September 1997, was effectuated by DHS pursuant to a clause in the July 30 order instead of being the result of a hearing under the child protection statutes. Second, she argues that the evidence was insufficient for a termination order.[2]

## II. STATUTORY GROUNDS FOR TERMINATION

[¶ 12] Chanin contends that the District Court erred in terminating her parental rights when the statutory basis had not been met. Specifically, she refers to 22 M.R.S.A. § 4055(1)(A) (1992 & Supp. 1998) which provides that termination of parental rights cannot be considered unless custody of the child has been removed from the parent pursuant to 22 M.R.S.A. §§ 4035 or 4038 (1992 & Supp.1998).[3] Chanin argues that because custody of Tyler was taken pursuant to the immediate transfer clause of the July 30 order, the removal of custody was not pursuant to either section 4035 or 4038. Section 4035 authorizes a final child protection order when a court finds that a child is in circumstances of jeopardy. Section 4038 mandates periodic reviews of child protec-

---

**2.** Although DHS is not required to prove that it made a good faith reunification effort before parental rights can be terminated, Chanin argues that DHS failed to implement a rehabilitation and reunification plan for herself and Tyler, and therefore, DHS is unable to demonstrate that it was entitled to cease reunification efforts. *See* 22 M.R.S.A. § 4041(1)(A) (1992 & Supp.1998); *In re Denise M.*, 670 A.2d 390, 394 n. 8 (Me.1996) (citing *In re Daniel C.*, 480 A.2d 766, 771–72 (Me.1984)).

DHS made reasonable reunification efforts after the initial orders in 1995. Such efforts were at least partially successful, and conditional custody of Tyler was returned to Chanin in the July 30 order. After the removal of Tyler from Chanin in September 1997, Chanin made herself unavailable to reunification efforts. The trial court found that Chanin's refusal to disclose her address prevented DHS from offering services to her.

**3.** The alternative statutory bases do not pertain to this situation. *See* 22 M.R.S.A. § 4055(1)(A)(1)(b) and (c) (1992).

tion orders and authorizes the court to make further dispositional orders.

[¶ 13] The July 30 order was an order pursuant to section 4038. Custody of Tyler was returned to Chanin under detailed conditions with the express caveat that custody would be removed immediately from Chanin if she violated certain of those conditions. Upon learning of Chanin's violation of the conditions that David was not to reside in the home and Tyler was not to have unsupervised contact with David, DHS removed custody of Tyler from Chanin. This was a removal of custody from a parent pursuant to an order authorized by section 4038. Thus, the prerequisite for a termination order set forth in section 4055(1)(A)(1)(a) was met.

[¶ 14] Chanin next argues that the removal of custody under the immediate transfer clause of the July 30 order deprived her of her right to a hearing to determine if Tyler had been living in circumstances of jeopardy. The July 30 order, however, expressly notified Chanin that a hearing would be held upon her request for one. She never requested a hearing, and therefore, she cannot be heard to complain that she was deprived of one.

[¶ 15] Chanin also contends that DHS failed to prove by clear and convincing evidence that: (1) she was unwilling or unable to protect Tyler from jeopardy and these circumstances are unlikely to change within a time reasonably calculated to meet Tyler's needs; or (2) she was unable or unwilling to take responsibility for Tyler within a time reasonably calculated to meet his needs; or (3) she failed to make a good faith effort to rehabilitate and reunify with Tyler. *See* 22 M.R.S.A. § 4055(1)(B) (1992 & Supp.1998). This argument is a challenge to the sufficiency of the evidence, and we examine whether the trial court "reasonably could have been persuaded on the basis of evidence on the record that the required factual findings were 'highly probable.'" *In re Denise M.,* 670 A.2d 390, 393 (Me.1996).

[¶ 16] Here, the trial court found three bases for termination and not just one basis as required by the statute. *See* 22 M.R.S.A. § 4055(1)(B)(2)(b) (1992). The record supports the findings that Chanin was unable and unwilling to take responsibility for and protect Tyler from jeopardy within a time reasonably calculated to meet his needs. Chanin was unable to protect Tyler from unsupervised contact with an abusive step-parent, and she admitted that she was unable to take responsibility for him in her current situation without additional structure and parental education. Furthermore, her refusal to disclose her address to DHS and to cooperate with DHS justified the finding that she failed to make a good faith effort to reunify with Tyler. Given the evidence before it, the trial court "reasonably could have been persuaded ... that the required factual findings were 'highly probable.'" *In re Denise M.,* 670 A.2d at 393.

The entry is:

Judgment affirmed.